# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| JOSE LUIS NUNEZ, | CV 06-01246 TJH |
| Petitioner, | |
| v. | Order |
| D. RUNNELS, | |
| Respondent. | |

In 2003, Nunez was charged with one count of attempted premeditated murder, one count of discharge of a firearm from a motor vehicle, one count of assault with a firearm and one count of possession of a firearm by a felon.

Nunez was tried by jury in state court. The trial lasted 13 court days. The jury began its deliberations on the tenth court day. On the eleventh court day the jury deliberated until 1:55 p.m., whereupon the foreperson of the jury notified the court that the jury could not reach a verdict and that the jury did not believe that additional time would allow it to do so. The court asked the jury to persevere with its deliberation. The court emphasized the amount of time that had been invested in

bringing the case to trial and opined that the jury had spent insufficient time in deliberation. The jury resumed deliberations.

At 3:30 p.m. that same day, the foreperson of the jury notified the court that the jury had made no progress in moving toward a unanimous decision. The foreperson reiterated that the jury did not believe it could reach a unanimous verdict and requested that it be discharged. Addressing the court, the foreperson expressed concern that continuation of the deliberation process would result in a decision based on a "group thing" or based on people "caving in" in order to end deliberations. The trial court, reiterating the amount of time that had been invested in the case, declined to discharge the jury and ordered the jury to return the following morning for further deliberation.

Before the jury retired for the evening, one of the jurors asked if he could be excused and replaced with an alternate juror on grounds of financial hardship. The trial court declined to release the juror, but said that if the jury was still deadlocked the next afternoon it would address the subject at that time. Addressing the jury, the trial court repeated for the third time that it did not believe that the amount of time that the jury had spent in deliberation was commensurate with the amount of time it had taken to bring the case to trial. The court emphasized that it was the jury's duty to reach a verdict, if it could. The court clarified that it was not saying that the jury had to return a verdict, but that it was the court's experience that the deliberation process took more time than it had been afforded in this case.

The following day, the twelfth court day, the jury continued its deliberations. During the course of the day, the jury requested a re-reading of two witnesses' testimony and asked whether the jury's findings on particular charges had to be unanimous. At 3:50 p.m. the jury indicated that it had reached a verdict. Before the verdict was returned, Nunez made a formal motion for mistrial based on the

foreperson's expressed belief that the jury was hung and unable to reach a unanimous verdict on the charges. That motion was denied. The jury returned its verdict, finding Nunez guilty on all counts. Nunez was sentenced to a total term of 80 years to life.

In 2003, Nunez appealed his judgment to the California Court of Appeal on the grounds that the trial court, by declining to declare a mistrial, despite the jury foreperson's twice declared belief that the jury was unable to reach a verdict, and by the court's supplemental instructions to the jury urging them to persevere with their deliberations, coerced the jury into returning a verdict in violation of Nunez's constitutional rights under the Sixth and Fourteenth Amendments. In 2005, the Court of Appeal affirmed the trial court's judgment and sentence.

Nunez's petition for review was denied by the California Supreme Court in 2005.

On June 7, 2006, Nunez, proceeding *pro se*, filed a petition for writ of *habeas corpus* with this court.

Under section 2254 of the Antiterrorism and Effective Death Penalty Act ('AEDPA'), a *habeas* application shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless, *inter alia,* the adjudication of the claim resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254.

In support of his petition for *habeas corpus*, Petitioner relies substantially on Cal. Penal Code § 1140 as well as California state court decisions. Under section 2254, however, Petitioner's *habeas* application can only be granted if the state appellate court's dismissal of his claim was contrary to, or involved an unreasonable application of, clearly established *Federal* law. Neither Cal. Penal Code § 1140 nor

any of the California cases cited by Petitioner have a bearing on the determination of Petitioner's *habeas* application.

A trial court has authority to discharge a jury where, in its opinion, taking all of the circumstances of the case into account, there is a "manifest necessity for such an act, or the ends of public justice would otherwise be defeated." *United States v. Escalante* 637 F.2d 1197, 1202 (9th Cir. 1980). It is clear however, that the power to discharge should be used only with "the greatest caution, under urgent circumstances, and for very plain and obvious causes" (*United States v. Gann*, 732 F.2d 714, 725 (9th Cir. 1984)) and that a court should exercise sound discretion as to whether it is manifestly necessary to discharge the jury in any given case. Petitioner bears the burden of proving that there was an abuse of discretion. *Gann*, 732 F.2d 714 at 725 (denial of motion for mistrial not an abuse of discretion in the circumstances).

The Supreme Court has explicitly and repeatedly refused to delineate precisely the circumstances which would make it proper for a trial court to order a discharge of the jury. *See*, *Illinois v. Somerville*, 410 U.S. 458, 93 S. Ct. 1066, 35 L. Ed. 2d 425 (1973). It has been recognized however that 'manifest necessity' can arise where the jury cannot reach a verdict. *United States v. Jefferson*, 566 F.3d 928 (9th Cir. 2009). In determining whether a trial court has properly exercised its discretion to discharge the jury, a number of factors will be taken into consideration. These factors include: (1) A timely objection by defendant; (2) The jury's collective opinion that it cannot agree; (3) The length of deliberations of the jury; (4) The length of the trial; (5) The complexity of the issues presented to the jury; (6) Any proper communications which the judge had with the jury; and (7) The effects of possible exhaustion and the impact which coercion of further deliberations might have on the verdict. *Arnold*, 566 F.2d 1377, 1387 (9th Cir. 1978).

The Nunez trial court did not abuse its discretion when it declined to discharge the jury. Nunez has not established a "situation of great urgency where a mistrial should have been granted for very plain and obvious cause." *Gann,* 732 F.2d at 725. The trial judge specifically stated the length of time the jury had spent in deliberation and commented that the length of deliberation was "not commensurate with the amount of time it took to put on evidence in this case." The trial judge based this observation on experience garnered from 30 years on the bench, stating "it is my experience that this requires some more time."

"Any criminal defendant … being tried by jury is entitled to the uncoerced verdict of that body." *Lowenfield v. Phelps*, 484 U.S. 231, 241 108 S. Ct. 546, 98 L. Ed. 2d 568 (1988) . Coercive statements from the judge to the jury result in a denial of the defendant's right to a fair trial and an impartial jury. *Packer v. Hill,* 291 F.3d 569, 578 (9th Cir.2002).

Where a supplemental charge is given by a trial court to a jury that has declared itself deadlocked, that charge will be considered "in its context and under all the circumstances" to determine whether its effect was coercive. *DeWeaver v. Runnels,* 556 F.3d 995, 1007 (9th Cir. 2009). The Ninth Circuit considers four factors in this inquiry: (1) The form of the jury charge; (2) The period of deliberation following the charge; (3) The total time of deliberation, and (4) Any other indicia of coerciveness or pressure. *Weaver v. Thompson,* 197 F.3d 359, 366 (9th Cir. 1999).

Turning to the first factor, Petitioner claims that the comments made by the trial judge in this case "parroted the language" of an "Allen-style charge." In *Allen*, the Supreme Court approved a charge which instructed the jurors that it was their duty to decide the case, if they could conscientiously do so; that they should listen to each other's arguments with a disposition to be convinced; that, if much the larger

number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one; and that, if a majority was for acquittal, the minority should consider whether they may not reasonably doubt their judgment. *Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896).

The Ninth Circuit has consistently approved supplemental instructions given by a trial court to a jury urging it try to reach a unanimous verdict when they are in a form not more coercive than that given in *Allen*. In *Smith v. Curry,* 580 F.3d 1071 (9th Cir. 2009) the court made it clear that while a trial judge may not force or coerce a verdict, he or she may nonetheless instruct a deadlocked jury about its duty to deliberate. *Smith,* 580 F.3d at 1073. In *Walsh v. United States*, 371 F.2d 135 (9th Cir. 1967), the court declined to overturn a conviction on the basis of jury coercion where the trial court simply instructed the jury, which had reported itself unable to reach a verdict after six hours of deliberation, to "keep trying." *Walsh*, 371 F.2d at 136. The court pointed out that the jury was not told that it must reach a verdict, nor were the minority members of the jury singled out or urged to defer to the views of the majority. *Walsh*, 371 F.2d at 136. In *United States v. Mason*, 658 F.2d 1263 (1981), the court considered the coercive effect of comments by the trial court regarding the expense of the case in terms of time and money. It held that such comments did not necessarily make the charge more coercive, though they did tip the charge in that direction. *Mason*, 658 F.2d at 1267.

The instruction in this case was milder in several respects than that given in *Allen*. The trial court did not instruct jurors to re-examine, and possibly change their opinions, or to consider questioning the correctness of their present positions. The court repeatedly emphasized that it was not trying to force or coerce a verdict and assured members of the jury that the deliberation process would not "go on forever." The court made it clear that the matter would be readdressed the

following evening if the jury were still unable to reach agreement at that point. The jury was instructed that it had duty to reach a verdict, if it could, but "if not, then not." Although the trial court emphasized the time that had been invested in bringing the case to trial, the instructions taken as a whole were "not more coercive" than those given in *Allen*.

Turning to the second factor, the period of deliberation following a supplemental charge has been regarded as a significant, but not dispositive, factor in detecting coercion. In *United States v. Beattie*, 613 F.2d 762 (9th Cir. 1980), the Ninth Circuit found that a period of deliberation of three and one-half hours after the supplemental charge was "sufficiently long to permit jury members to reach a reasoned decision, based upon their individual perceptions of the evidence and the law." *Beattie*, 613 F.2d at 765. In Nunez's case, the jury deliberated for almost a whole day after the trial court returned it for further deliberation for the second time. This period of time was sufficient for each juror to reach a reasoned decision based on his or her own perception of the evidence and the law and indicates a lack of coercion.

Turning to the third factor, the total time of juror deliberation is "relevant as to the coercive effect that an *Allen* charge may have had in relation to the difficulty of the task before the jury." *Foster*, 711 F.2d at 884. In *Beattie*, the Ninth Circuit emphasized that the time needed to reach a verdict is "best left to a trial judge." *Beattie*, 613 F.2d at 766. Approximately twelve hours of deliberation following four days of evidence was not found to be "so disproportionate to the task before the jury as to raise an inference that the *Allen* charge coercively produced the result." *Beattie*, 613 F.2d at 766. In Nunez's case, the jury deliberated for almost three full days following approximately four and one half days of evidence and instruction. This period was not "so disproportionate to the jury's task" as to raise an inference

of coercion.

Turning to the fourth factor, "other indicia of coerciveness of pressure," *Weaver,* 197 F.3d at 366, will, also, be considered in determining the overall coerciveness of a supplemental instruction. In *United States v. Sae-Chua*, 725 F.2d 530, 532 (9th Cir.1984), the court found an *Allen* charge impermissibly coercive in circumstances where the trial judge knew the numerical division of the jury, which way the jury was leaning and could have inferred the identity of the hold-out juror. The absence of indicia of coercion is equally pertinent. In *United States v. Ajiboye*, 961 F.2d 892 (9th Cir. 1992), the fact that the jury asked for some of the trial testimony to be re-read before reaching its verdict was held to be "a pretty good indication that the *Allen* charge did not coerce the guilty verdicts." *Ajiboye*, 961 F.2d at 894. The fact that an *Allen* instruction was not rendered in an atmosphere of judge or jury frustration over the jury's failure to reach a verdict was considered an important factor in finding an absence of coercion in *Beattie*, 613 F.2d at 766.

In Nunez's case, there were no other indicia of pressure of coercion which would require this court to find a coerced jury verdict. The trial judge showed no signs of exacerbation or frustration at the jury's inability to return a verdict. Nor did the trial judge have knowledge of the way the jury was split or of the voting inclinations of individual jurors. Accordingly, no juror had any reason to believe that the trial judge's comments urging agreement were being leveled at him or her, or even that the comments were aimed at jurors on one side or the other. Whilst a number of remarks indicated the jury's initial frustration at its own inability to reach a unanimous verdict, on its final day of deliberations the jury asked for a re-reading of the trial testimony of two witnesses and asked whether the jury's findings on the enhancements had to be unanimous. These are signs of rational and uncoerced deliberation and indicate that the jury carefully considered the evidence.

In their "context and under all the circumstances," the trial court's comments did not coerce the jury into reaching a verdict in Nunez's case in violation of his constitutional rights to a fair trial and an impartial jury under the Sixth and Fourteenth Amendments.

The decision of the California Court of Appeal dismissing Petitioner's claim of constitutional error was neither contrary to, nor involved an unreasonable application of, Federal law. Therefore,

𝕴𝖙 𝖎𝖘 𝕺𝖗𝖉𝖊𝖗𝖊𝖉 that Nunez's petition for *habeas corpus* be, and hereby is, 𝕯𝖊𝖓𝖎𝖊𝖉.

Date:  July 26, 2010

_____
Terry J. Hatter, Jr.
Senior United States District Judge